

**FILE**

IN CLERKS OFFICE

SUPREME COURT, STATE OF WASHINGTON

DATE JUN 2 6 2014

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on June 26, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 88270-3 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| K.L.B., | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed JUN 2 6 2014 |

C. JOHNSON, J.—The main issue in this case is whether a Sound Transit fare enforcement officer (FEO) is a "public servant" as defined in RCW 9A.04.110(23). Fifteen-year-old K.L.B. was charged with making a false or misleading statement to FEO Brett Willet under RCW 9A.76.175, which provides that it is a misdemeanor to knowingly make "a false or misleading material statement to a public servant." The Court of Appeals affirmed the trial court's conclusion that under the statute, FEO Willet was a public servant at the time K.L.B. made the false statement. We hold that under these circumstances, because FEOs are not government employees, are not officers of government, and do not perform a

governmental function, they are not "public servants" as defined by the statute. Therefore, we reverse the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

Brett Willet and Ben Hill were working as Sound Transit FEOs on Seattle's Link light-rail train system (the Link). The position of an FEO is a limited-commission office authorized to issue citations for civil infractions on both light-rail and heavy-rail trains. Sound Transit contracts with Securitas Security Services to provide security and fare enforcement services for the Link. The FEOs wear a uniform with patches reading "Sound Transit," "security," and "fare enforcement." Verbatim Report of Proceedings (VRP) at 27-28. They also wear a tool belt, which includes a radio, handcuffs, and a key ring but does not include a weapon.

On August 6, 2010, the two FEOs entered a train car at the Rainier Beach station and instructed all passengers to present proof of fare. When FEO Willet asked K.L.B. and his companions to present proof of fare payment, they gave him their bus transfers. FEO Willet informed them that while bus transfers used to be valid on the light-rail, they were no longer accepted. K.L.B. and his companions said that they were unaware of the change and unfamiliar with the current system. The three young males were instructed by FEO Willet to exit the train at the next station. The FEOs asked the three males for identification once they exited the train.

All three were either unable or unwilling to provide identification. K.L.B. identified himself to FEO Willet as Kinds M. Marty. One of K.L.B.'s companions identified himself as James J. King, while the other identified himself as Jamal J. Johnson.

K.L.B. was temporarily detained at the Othello station. The King County Sheriff's Office was called to assist in identifying K.L.B. and his companions so they could potentially be cited for fare evasion. Deputy Lee Adams spoke with K.L.B., and two other deputies spoke with his companions. K.L.B. gave his correct name and birth date to Deputy Adams after the deputy warned him that it was a crime to lie to a police officer. Deputy Adams then asked K.L.B. to identify one of his male companions. He responded that he did not know his companion's full name and that he knew him only as "'Marty.'"[1] Clerk's Papers at 43. FEO Willet informed all three individuals that they might receive citations for fare evasion in the mail. Deputy Adams returned to the station and used a computer database to identify the third companion whom K.L.B. identified as "Marty." Deputy Adams was able to positively identify him within an hour. There was an assault warrant out for this individual's arrest.

---

[1] K.L.B. originally identified himself as Kinds M. Marty and later identified his companion by only the first name of Marty.

K.L.B. was then charged with two counts of making a false or misleading statement to a public servant under RCW 9A.76.175. K.L.B. was found guilty of making a false statement to FEO Willet (count II). He was found not guilty of making a false statement to Deputy Adams (count I). K.L.B. was obligated to pay a crime victim assessment penalty of $75 but received no further punishment.

K.L.B. appealed to Division One of the Court of Appeals, which affirmed his conviction. *State v. K.L.B.*, noted at 169 Wn. App. 1034, 2012 WL 3065326, at *7, *review granted*, 177 Wn.2d 1004 (2013). Here, K.L.B. argues that a Sound Transit FEO is not a "public servant" as defined in RCW 9A.04.110(23). He also argues that the definition of "public servant" is unconstitutionally vague and that to convict a person of making a false or misleading statement to a public servant, the State must prove that the defendant knew the statement was made to a public servant.

ANALYSIS

K.L.B. was charged with making a false or misleading statement to FEO Willet under RCW 9A.76.175, which provides in relevant part that "[a] person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor." Under RCW 9A.04.110(23), the term "public servant" is defined as

any person other than a witness who presently occupies the position of or has been elected, appointed, or designated to become any officer or employee of government, including a legislator, judge, judicial officer, juror, and any person participating as an advisor, consultant, or otherwise in performing a governmental function.

This case involves statutory interpretation, which is an issue of law reviewed de novo. The first step in statutory interpretation is to consider the statute's plain language. If the statute is unambiguous, meaning it is subject to only one reasonable interpretation, our inquiry ends. *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013).

Looking at the statutory language, the "list" is specific and express. Police officers and judges are public servants under RCW 9A.04.110(23), which has been recognized in cases. *State v. Graham,* 130 Wn.2d 711, 719, 927 P.2d 227 (1996) (police);[2] *State v. Stephenson,* 89 Wn. App. 794, 808-09, 950 P.2d 38 (1998) (judges). The definition also applies to those who hold government office or employment or who have been selected to do so, but it does not include a candidate for election as a "public servant." *State v. Hendrickson,* 177 Wn. App. 67, 75, 311

---

[2] In *Graham*, two off-duty police officers were working as private security guards when they searched and arrested the defendant. We held that when the officers stopped the defendant, they stepped out of their roles as private security guards and into their roles as police officers. They were identified as police officers, and their status as police officers was known to the defendant. Therefore, we held that they were public servants.

P.3d 41 (2013), *review denied*, 179 Wn.2d 1017, 318 P.3d 280 (2014). The definition of "public servant" also includes "legislator[s], judge[s], judicial officer[s], [and] juror[s]" who are public employees for purposes of wages, benefits, or liability. RCW 9A.04.110(23). The main dispute here is whether FEO Willet was "otherwise . . . performing a governmental function" or was an "officer" under the statutory definition. RCW 9A.04.110(23).

> a. *FEO Willet was not "otherwise . . . performing a governmental function" under RCW 9A.04.110(23)*

K.L.B. claims that both the trial court and the Court of Appeals improperly found that FEO Willet was a public servant because this broad interpretation improperly renders superfluous the phrase "advisor, consultant, or otherwise" as it appears in RCW 9A.04.110(23). According to K.L.B.'s interpretation, the term "otherwise" encompasses only positions that are similar in nature to advisors or consultants. We agree.

Under settled principles of statutory construction, general words accompanied by specific words are to be construed to embrace only similar objects. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 151, 3 P.3d 741 (2000).[3] This canon properly applies where there is a list of specific terms followed by a general term,

---

[3] Ejusdem generis.

6

i.e., "specific, specific, or general." *See Sw. Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 116, 667 P.2d 1092 (1983). Here, we are interpreting the phrase "advisor, consultant, or otherwise in performing a governmental function,"[4] in other words, "specific, specific, general." Therefore, under this canon of interpretation, a person qualifies as a public servant where they are acting as an advisor, a consultant, or something similar in performing a governmental function. FEO Willet was not acting as an advisor, a consultant, or something similar when K.L.B. made a false statement to him.[5]

---

[4] The dissent argues that it if we apply ejusdem generis, we must apply it consistently to the larger list—i.e., the entire statute. The dissent then argues that such a reading would be nonsensical because "the phrase 'any person participating as an advisor, consultant, or otherwise in performing a governmental function' would be read to modify the list that includes legislators, judges, judicial officers, and jurors." Dissent at 4. However, the dissent misunderstands how this canon applies. Under ejusdem generis, general words accompanied by specific words are to be construed to embrace only similar objects; this cannon applies when a list of specific terms is followed by a general term. Here, the dissent has it backwards; "any person participating as an advisor, consultant, or otherwise in performing a governmental function" would not modify the other lists, but rather the more specific lists would modify who was an "advisor, consultant, or otherwise." Applying the canon correctly, "any person participating as an advisor, consultant, or otherwise" must be similar to a governmental employee, legislature, judge, judicial officer, or juror. As explained above, FEOs are not governmental employees and are not similar to an elected official, judicial officer, or juror.

[5] The dissent also cites *Jongeward v. BNSF Railway*, 174 Wn.2d 586, 617, 278 P.3d 157 (2012), to argue that ejusdem generis does not apply when interpreting a phrase containing the word "otherwise." However, this support is misplaced, as the clause at issue in *Jongeward* differs from the statutory clause in this case. In *Jongeward*, the dissent argued that the "canon properly applies where there is a list of specific terms followed by a general term, i.e., 'specific, specific, or general.'" *Jongeward*, 174 Wn.2d at 614 (Wiggins, J., dissenting) (citing *Sw. Wash. Chapter, Nat'l Elec. Contractors Ass'n*, 100 Wn.2d at 116). In *Jongeward*, we were interpreting the phrase "cut down, girdle or otherwise injure, or carry off," in other words, "specific, specific or general,

Under another well-known canon of statutory construction, "a single word in a statute should not be read in isolation." *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005).[6] Applying this framework, "otherwise" must be read in conjunction with the other nouns—"advisor" and "consultant." Because "advisor" and "consultant" modify "in performing a governmental function," we can glean the legislature's intent that not every person performing a governmental function is to be considered a public servant under the statute. Only those who are participating as an advisor, consultant, or something similar in performing a governmental function are public servants.

The State argued that FEO Willet was clearly performing a government function—fare enforcement—and that there is no meaningful argument that the legislature intended to define "public servants" narrowly. However, as K.L.B. points out, "a court must not interpret a statute in any way that renders any portion meaningless or superfluous." *Jongeward v. BNSF Ry.*, 174 Wn.2d 586, 601, 278

---

specific." *Jongeward*, 174 Wn.2d at 615 (Wiggins, J., dissenting). Therefore, the phrase "otherwise injure" was not to be construed to embrace only similar objects. In contrast, in this case we are interpreting the phrase "advisor, consultant, or otherwise in performing a governmental function," in other words, "specific, specific, general." Therefore, the canon does apply and under the statute, a person qualifies as a public servant only if they were acting as an advisor, a consultant, or something similar in performing a governmental function.

[6] Noscitur a sociis.

P.3d 157 (2012) (citing *Svendsen v. Stock*, 143 Wn.2d 546, 555, 23 P.3d 455 (2001)). The State's broad interpretation would render superfluous the phrase "advisor, consultant, or otherwise." If the legislature intended that everyone performing a governmental function be considered a public servant, the terms "advisor" and "consultant" would have no separate meaning.

Under the State's logic, any private security officer or individual performing a police-like governmental function would be a public servant. For example, a private security guard checking bags before patrons enter a sport stadium would be a public servant. If a patron made a false statement to such a security guard, then they could have criminal charges filed against them. Going even further, a vigilante—a person who is not a police officer but who tries to catch and punish criminals—would be a "public servant" and it would be a crime to make a false or misleading statement to such an individual. The State's argument that a "public servant" includes anyone "performing a governmental function" would ignore modifying language in the statute. In addition, interpreting the statute this broadly would raise questions as to the statute's vagueness and overbreadth.

b. *FEO Willet was not an "officer" under RCW 9A.04.110(23)*

The State separately argues that FEO Willet meets the definition of "public servant" as someone who occupies the position of an officer of government. Under

RCW 9A.04.110(23), a "public servant" includes "any person . . . who presently

occupies the position of or has been elected, appointed, or designated to become any

officer . . . of government." In turn, "officer" is defined as

> a person holding office under a city, county, or state government, or the federal government who performs a public function and in so doing is vested with the exercise of some sovereign power of government, and includes all assistants, deputies, clerks, and employees of any public officer and *all persons lawfully exercising or assuming to exercise any of the powers or functions of a public officer.*

RCW 9A.04.110(13) (emphasis added). The Court of Appeals agreed with the State

and held that "[t]he evidence supports that Willet was 'lawfully exercising or

assuming to exercise any of the powers or functions of a public officer' when he

was working as an FEO on August 6, 2010." *K.L.B.*, 2012 WL 3065326, at *3.

It is true that Sound Transit contracted with Securitas to provide fare

enforcement services in accordance with Sound Transit's statutory authority. It is

also true that under RCW 81.112.210(2)(b), FEOs have the authority to (i) request

proof of payment from passengers, (ii) request personal identification from a

passenger who does not produce proof of payment when requested, (iii) issue a

citation under RCW 7.80.070, and (iv) request that a passenger leave the facility

when the passenger has not produced proof of payment. However, these statutory

10

privileges do not transform Sound Transit FEOs (who in reality are Securitas employees) into public officers.

Under the plain language of the statute, an "officer" is a person holding office who performs a public function and who is vested with some sovereign power of government. As a private security officer, an FEO is not a public officer under this language of the statute, as they are not elected, appointed, or designated to hold office. Therefore, an FEO can possibly be an "officer" only under the second part of the statute, which provides that an "officer" can include someone "lawfully exercising or assuming to exercise any of the powers or functions of a *public officer.*" RCW 9A.04.110(13) (emphasis added). While the State and the Court of Appeals have pointed out statutory powers granted to Sound Transit and to FEOs generally, neither has directed us to the person holding public office whose power the FEOs are lawfully exercising. As mentioned, FEOs do not exercise all powers police officers have. In essence, they can check riders to verify valid tickets exist and eject passengers who have not paid. Anything more and the FEO summons the police. Therefore, a Sound Transit FEO cannot be "exercising or assuming to exercise any of the powers or functions" of someone that does not exist.

The State also argues that if FEO Willet and his colleagues were not public servants, passengers could lie to them without legal repercussions, which would

11

make it nearly impossible to enforce the fare policy and issue infractions. FEOs monitor compliance with fare collection. If someone has not paid their fare, they can be removed from the train and under certain circumstances given a citation. Alternatively, no reason exists why police officers cannot be summoned when needed, as occurred in this case. Police officers certainly qualify as public servants under the statute. K.L.B. was charged with two counts of knowingly making a false or misleading material statement to a public servant: one count was for his statement to Deputy Adams, but he was found not guilty of that charge.[7] These "legal repercussions" are sufficient to deter Sound Transit riders from evading their fares.

## CONCLUSION

Because we hold that FEOs are not "public servants" as defined by RCW 9A.04.110, we need not reach the other issues raised by K.L.B. The Court of

---

[7] In fact, while Deputy Adams works for the King County Sheriff's Office, he is specifically assigned to matters arising from the Link and the heavy-rail train. VRP at 87.

*State v. K.L.B.*, No. 88270-3

Appeals is reversed and K.L.B.'s charges are vacated.

WE CONCUR:

Fairhurst, J.

González, J.

Madsen, J.

No. 88270-3

J.M. JOHNSON, J.* (dissenting)—The majority misapplies the canons

of statutory construction in concluding that fare enforcement officers (FEOs)

are not "public servants" as defined by RCW 9A.04.110(23) and dismisses

the defendant's conviction for making a false or misleading statement to a

public servant. Because FEOs fulfill a governmental function and are officers

within the meaning of the relevant statute, I dissent.

## ANALYSIS

A Sound Transit Fare Enforcement Officer Whose Employment Is Contracted
Through a Private Security Firm Is a "Public Servant" under RCW
9A.04.110(23)

I agree that the first step in statutory interpretation is to consider the

statute's plain language; often this is the only analysis needed. The majority

accurately states the rules of statutory construction where application of the

canons of construction is necessary. Majority at 5. I disagree with the manner

in which the majority applies these rules to construe the statute.

*Justice James M. Johnson is serving as justice pro tempore of the Supreme Court
pursuant to Washington Constitution article IV, section 2(a).

K.L.B. was convicted of making a false or misleading statement to a public servant, FEO Willet, under RCW 9A.76.175. Under RCW 9A.04.110(23), the term "public servant"

> means any person other than a witness who presently occupies the position of or has been elected, appointed, or designated to become *any officer* or employee *of government*, including a legislator, judge, judicial officer, juror, and any person participating as an advisor, consultant, or otherwise in *performing a governmental function*.

(Emphasis added.) FEO Willet was both an "officer of government" and "performing a governmental function." Accordingly, FEO Willet was a public servant and making a false or misleading statement to FEO Willet violated RCW 9A.76.175.

a. *FEO Willet Was "Performing a Governmental Function" under RCW 9A.04.110(23)*

The majority argues that a broad construction of "performing a governmental function" improperly renders superfluous the phrase "advisor, consultant, or otherwise" as it appears in RCW 9A.04.110(23). Majority at 6. According to the majority, the term "otherwise" encompasses only positions that are similar in nature to advisors or consultants. *Id.*

Two principles historically expressed in Latin guide our analysis: *noscitur a sociis* and *ejusdem generis*. Under *noscitur a sociis*, "a single word

2

in a statute should not be read in isolation . . . . '[T]he meaning of words may be indicated or controlled by those with which they are associated.'" *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)). Under ejusdem generis, general words accompanied by specific words are to be construed to embrace only similar objects. *Sw. Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 116, 667 P.2d 1092 (1983). However, these rules do not, as the majority contends, lead to a narrow interpretation of "public servant" that excludes FEOs.

The first phrase in the statute is intended to include anyone occupying the position of an officer or employee of government (regardless of how that person came to occupy the position, be it through election, appointment, or designation).[1] Next, the statute provides a list of persons expressly intended to be included in the definition (legislators, judges, judicial officers, and jurors). The last item in the statutory definition's list is still another list (that is, "any person participating as an advisor, consultant, or otherwise in performing a governmental function"). The majority ignores that this is a list within a list in arguing against a broad interpretation. If ejusdem generis was

---

[1] There is also an express exclusion of witnesses.

3

applied consistently to the first, larger list, then the phrase "any person participating as an advisor, consultant, or otherwise in performing a governmental function" would be read to modify the list that includes legislators, judges, judicial officers, and jurors. However, such a reading is nonsensical. Consultants and advisors are not anything like legislators, judges, judicial officers, and jurors. Clearly, the legislature did not adopt this statute with the intent that ejusdem generis apply.

This court has rejected similar improper ejusdem generis arguments before as Justice Wiggins noted in his dissent in *Jongeward v. BNSF Railway*, 174 Wn.2d 586, 617, 278 P.3d 157 (2012):[2]

> It does not make sense to apply the rule where a general phrase is modified by "otherwise." The word "otherwise" means "different" or "in a different way or manner." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1598 (2002). This alone manifests a legislative intent not to limit the general phrase to things comparable to the specific phrases, and other courts have refused to apply ejusdem generis to "otherwise" phrases for this very reason.

Ejusdem generis is unhelpful in interpreting a phrase containing the word "otherwise" due to its plain language definition. Therefore, "otherwise . . .

---

[2] In *Jongeward*, both the majority and the dissent rejected the defendant's ejusdem generis argument. 174 Wn.2d at 595. The dissent discussed the argument in more depth, whereas the majority dismissed it out of hand.

performing a governmental function" is not necessarily limited to categories of workers similar to advisors and consultants. RCW 9A.04.110(23). In fact, the plain meaning of the word "otherwise" indicates that the term is intended to apply to those who are "different" from advisors and consultants. *Jongeward*, 174 Wn.2d at 595.

Even if the legislature did intend ejusdem generis to apply, the majority does not apply it correctly in this instance. The list is not the usual "specific, specific, general" type of list, as the majority asserts. Rather, the list provides a large number of specific examples with a very broad catchall provision at the end. That is, the statute applies regardless of whether the person is a legislator, a judge, a juror, an advisor, a consultant, or anyone else who acts on behalf of the government.

It is more consistent with other recognized canons of construction to consider a FEO as "otherwise . . . performing a governmental function," whether employed directly by the government or contracted through a private security firm. Knowing this term by the company it keeps indicates that "otherwise . . . performing a governmental function" should be interpreted consistently with the other examples in the statute. These specific examples include all employees of government, legislators, and jurors. RCW

9A.04.110(23). Like these other categories of people,[3] FEOs are ultimately compensated by the government, albeit indirectly through their private security firms. Moreover, FEOs are expressly charged by statute with providing a governmental function.[4]

The majority uses the examples of private security guards at sporting events and vigilantes as evidence that the legislature could not have intended the statute to apply so broadly. Both of these examples miss the mark because "security" is not always a governmental function. But, sporting event security guards and vigilantes perform decidedly nongovernmental functions of deterring or stopping crime without statutory authority.

FEOs are different from both of these examples because FEOs are expressly empowered by statute to fulfill the governmental function of writing citations to enforce governmental policies and rules. No such statute

---

[3] *See* RCW 2.36.150 (specifying compensation for jurors).

[4] Under RCW 81.112.210(1), regional transit agencies like Sound Transit may establish a schedule of fines and penalties for civil infractions under RCW 81.112.220. Failure to provide proof of fare is one such infraction. Transit agencies "may designate persons to monitor fare payment who are equivalent to and are authorized to exercise all the powers of an enforcement officer, defined in RCW 7.80.040. An authority is authorized to employ personnel to either monitor fare payment, or to contract for such services, or both." RCW 81.112.210(2)(a). Under these provisions, Sound Transit is statutorily authorized to contract with Securitas to provide fare enforcement services. These FEOs employed by Securitas are statutorily authorized to request proof of payment from passengers, request identification from those who do not have proof of payment, issue citations, and ask passengers to leave the facility. RCW 81.112.210(2)(b).

6

authorizes Phoenix Jones[5] or any other private citizen to perform any governmental function such as arresting, charging, or prosecuting criminals. Such private actors may call law enforcement officers and observe the situation until the officers arrive.[6] The legislature has empowered neither Phoenix Jones nor private security guards with the same statutory authority it has FEOs.

The plain language of the statute, informed by the canons of construction cited above, indicates that FEO Willet was, in fact, performing a governmental function. Moreover, it is improbable that the legislature would criminalize making a false statement to all government employees, such as elementary school teachers, but not FEOs expressly charged by statute with issuing civil infractions for fare evasion. Because FEO Willet was performing a governmental function under RCW 9A.04.110(23), I would hold that he was a "public servant" for the purposes of making a false or misleading statement to a public servant.

---

[5] Phoenix Jones is a notable Seattle resident who dons a superhero costume and "fights crime" as a vigilante.

[6] These restraints actually make Phoenix Jones more closely resemble a witness, which is expressly excluded from the definition of a "public servant."

b.     *FEO Willet Was an "Officer" under RCW 9A.04.110(23)*

In addition to performing a governmental function, FEO Willet falls within the definition of "officer" under RCW 9A.04.110(23). The Washington Criminal Code defines "officer" as

> a person holding office under a city, county, or state government, or the federal government who performs a public function and in so doing is vested with the exercise of some sovereign power of government, and includes all assistants, deputies, clerks, and employees of any public officer and all persons lawfully exercising or assuming to exercise any of the powers or functions of a public officer.

RCW 9A.04.110(13). Under the plain language of RCW 9A.04.110(13), FEO Willet was "lawfully exercising or assuming to exercise . . . powers or functions of a public officer." As noted, transit agencies "may designate persons to monitor fare payment who are equivalent to and are authorized to exercise all the powers of an enforcement officer, defined in RCW 7.80.040. [A transit] authority is authorized to employ personnel to either monitor fare payment, or to contract for such services, or both." RCW 81.112.210(2)(a). An "enforcement officer" is defined as "a person authorized to enforce the provisions of the title or ordinance in which the civil infraction is established." RCW 7.80.040. Through these provisions, Sound Transit is statutorily

8

authorized to employ directly or contract for the services of officers who are charged with enforcing the provisions involving civil infractions.

FEOs also fall under chapter 10.93 RCW, the Washington Mutual Aid Peace Officers Powers Act of 1985. RCW 10.93.020(4) defines "limited authority Washington peace officer" as "any full-time, fully compensated officer of a limited authority Washington law enforcement agency empowered by that agency to detect or apprehend violators of the laws in some or all of the limited subject areas for which that agency is responsible." *See also* RCW 10.93.080 (such officers shall have no additional powers by virtue of chapter 10.93 RCW).

I conclude that FEOs fall under several plain language statutory definitions of "officer" relating to their fare enforcement duties. Interpreting these provisions consistently with RCW 9A.04.110(23) and RCW 9A.04.110(13) vindicates the legislature's intent to define FEOs as public servants, whether employed directly by the government or through private security firms. *See State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013) ("related statutory provisions must be harmonized to effectuate a consistent statutory scheme that maintains the integrity of the respective

statutes"). FEO Willet satisfies the definition of "officer" found in RCW 9A.04.110(13) and is, therefore, a public servant.

Finally, it makes little sense for the legislature to create the fare enforcement system but fail to give its officers any workable enforcement mechanism. Because the majority holds that FEOs are not public servants, passengers can lie to them without legal repercussions, making it impossible to enforce the fare policy and issue infractions.[7] Without a passenger's name and address, it is impossible to issue an infraction for fare evasion.

Because the majority holds that FEOs are not public servants, they are not subject to the terms of various anticorruption statutes, including bribery (RCW 9A.68.010), requesting unlawful compensation (RCW 9A.68.020), or official misconduct (RCW 9A.80.010). The legislature could not have intended such results when it authorized Sound Transit to designate FEOs.[8]

For these reasons, Sound Transit FEOs whose employment is contracted through private security firms are "public servants" under RCW 9A.04.110(23). The majority ignores the legislature's plain intent to

---

[7] The system is, in part, financed by bonds reliant on fare collection.
[8] The majority's construction renders FEOs completely impotent in the face of a dishonest fare dodger because they can summon police officers "when needed." Majority at 12. If this was the case, the entire statute authorizing FEOs is rendered superfluous because only police officers can effectively enforce the payment of fares.

10

criminalize making a false or misleading statement to FEOs under RCW 9A.76.175.[9]

CONCLUSION

We should hold that Sound Transit FEOs, including those whose employment is contracted through private security firms, are "public servants" under RCW 9A.04.110(23). The nature of FEO Willet's employment on August 6, 2010, satisfies the definition in two ways: (1) he was performing a governmental function and (2) he was an officer of government. Accordingly, the Court of Appeals should be affirmed and the conviction enforced.

Repayment of the substantial public investment in transit depends on enforcement of the rules and fares set for that purpose.

---

[9] I take this opportunity to point out that the legislature may reverse the outcome of this case by amending RCW 9A.04.110(23) to expressly include FEOs in the definition of "public servants" or adjust the form of the sentence so that the catchall term "otherwise . . . performing a governmental function" is at the end of the full list, rather than at the end of the list within a list. *See supra* p. 3.

11

J.M. Johnson, J., P.T.

Wiggins, J.

Stephens, J.

*State v. K.L.B.*

No. 88270-3

MADSEN, C.J. (concurring in dissent)—In a time of fiscal austerity, it is surprising that King County elected to use its resources to prosecute a young man for his apparent lack of candor with uniformed officers after being informed that Sound Transit no longer accepted bus transfers as legitimate fare. The use of considerable public resources to prosecute such a minor infraction, especially one that can easily be understood as a crime of poverty, is remarkable. It is more surprising, however, that the majority can find the Sound Transit fare enforcement officer was performing a government function, fare enforcement, but that this officer was not a "public servant." The analysis presented by the majority would define the engineering consultant hired to design the light-rail as a "public servant" while excluding fare enforcement officer Brett Willet, interacting with the public and issuing citations on the light-rail, from the same titular description. I cannot subscribe to the majority's application of the rules of statutory construction because it leads to an untenable result. Therefore, I join and concur in the dissent.

No. 88270-3

Madsen, C.J., concurring in dissent

_Madsen, C.J._

_Stern, J._

2