# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| POTELCO, INC.; JEFF LAMPMAN, | No. 49716-6-II |
| Appellants, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, P.J. — The Department of Labor and Industries issued Potelco Inc. a citation for violating an electricians and electrical installations regulation. Specifically, the citation alleged that Potelco failed to comply with WAC 296-46B-901(9)(a), which requires that an electrical contractor request an inspection after the contractor completes or energizes an electrical project. The Department also issued a citation to Potelco's site administrator, Jeff Lampman, for failing to comply with RCW 19.28.061(5)(b), which requires that a site administrator ensure all electrical work complies with the electrical laws and rules of the State. Potelco and Lampman now appeal the superior court's order affirming the Washington State Electrical Board's decision affirming the Department's citation and penalty assessment.

Potelco and Lampman argue that (1) the Board's order is not supported by substantial evidence, (2) Lampman did ensure compliance as required under RCW 19.28.061(5)(b), and (3) the Board's affirmation of Lampman's citation improperly transformed RCW 19.28.061(5)(b) into a strict liability statute. We affirm the Board's order.

FACTS

I. BACKGROUND

The White River School District hired Potelco to replace underground power cables at a school in Buckley. The project required Potelco to install high-voltage wires between a utility pole and the school's transformer. This type of project required a permit from the Department of Labor and Industries and also required a final inspection by a Department inspector to ensure compliance with the National Electrical Code and related Washington statutes and Department regulations.

On July 17, 2013, while Potelco's crew worked to complete the installation project, Department inspector John Boespflug was in the area on other business. After seeing a Potelco truck parked behind the school, Boespflug decided that it would "be a good time to go over [to the work site]." Clerk's Papers (CP) at 45. The installation was not complete because the Potelco crew had not installed connectors to the high-voltage wires to connect them to the transformer. Boespflug spoke to the linemen at the work site and told them that "everything looked good." CP at 583. Potelco's crew did not energize or complete the project while Boespflug was at the site, but the crew energized the project the next day.

In October 2013, Boespflug reviewed the Department records to see if Potelco had requested a final inspection for the project and discovered that Potelco had not. Boespflug then called Lampman and informed him that Potelco needed to request an inspection for the project. Potelco then requested a final inspection, and Boespflug later gave final approval on the project.

The Department subsequently issued Potelco a citation for failing to request an inspection within three business days after completion of the installation or within one day after energizing

the project pursuant to WAC 296-46B-901(9)(a).[1] The citation included a penalty in the amount of $250. The Department also issued Lampman, as the administrator, a citation for failing to ensure that Potelco complied with the electrical laws of Washington State pursuant to RCW19.28.061(5)(b).[2] Lampman's citation included a penalty in the amount of $100.

## II.  PROCEDURAL AND ADMINISTRATIVE HISTORY

Potelco and Lampman appealed the citations to the Office of Administrative Hearings (OAH). The issues before the OAH were whether Potelco failed to request an inspection within three business days after completion of the installation or one business day after energizing, whichever occurred first, as required by WAC 296-46B-901(9)(a), and whether Lampman failed to ensure all electrical work complied with the electrical laws and rules of the State, as required by RCW19.28.064(5)(b).

An OAH administrative law judge (ALJ) held a hearing on the matter. Boespflug, Lampman, Potelco manager John Gower, foreman Mark Langberg, and lineman Kevin Hudson, among others, testified at the hearing. Glen Thomas, an employee of Potelco who had obtained the initial permit for the project, did not testify.

---

[1]  WAC 296-46B-901(9)(a) provides:
> (9) Requests for inspections.
> (a) Requests for inspections must be made no later than three business days after completion of the electrical/telecommunications installation or one business day after any part of the installation has been energized, whichever occurs first.

[2] RCW 19.28.061(5)(b) provides:
> (5) The designated master electrician or administrator shall:
> (b) Ensure that all electrical work complies with the electrical installation laws and rules of the state.

Boespflug testified that he "expected" that the Potelco crew would complete the project on the day he was at the work site. CP at 583. Boespflug also testified that he told the crew that they needed to make sure the project was "called in and requested for inspection." CP at 583. Boespflug testified that if he had completed an inspection the day he went to the work site, the permit would have been signed off and the electronic system would reflect that he had conducted an inspection. Boespflug stated that he did not complete any documentation at the work site the day he was there because the project was not complete and because he had not received information as to whether the connectors Potelco was using were appropriate. Boespflug further testified that he did not know of any statute or regulation that allows a final inspection to be conducted when a project is "almost completed" and that the law is very specific and required that a request for inspection be made when the project is complete. CP at 665.

Langberg testified that the project was completed within an hour of Boespflug being at the work site. Langberg also stated that it was his understanding that Boespflug conducted an inspection while he was at the site. Langberg testified that he personally did not call in any inspection but that it was his assumption that Thomas was the person who would have called. Langberg added that he did not recall if Boespflug informed the crew that they needed to request an inspection.

Hudson testified that Boespflug told the crew that they could "heat up the wire" which Hudson interpreted to mean that the crew could energize the wires. CP at 635. Hudson also testified that he assumed Boespflug was there for an inspection and that he personally did not call in for the inspection and did not know if anyone else called in for an inspection.

4

Lampman testified as to his role as site administrator, and explained that he was responsible for ensuring that the company complies with all the rules and regulations of electrical laws. Lampman stated that he ensures that Potelco complies with electrical laws by offering training sessions for employees and by forwarding electrical newsletters by e-mail to managers about rule and regulation changes. Lampman also testified that he reviewed contracts for Potelco's projects as part of his duties. Lampman agreed that it was a requirement that an entity that obtains a permit for electrical work must also request an inspection upon completion of the work.

Lampman then explained that after a project's completion, he sometimes requests an inspection and at other times it is the person who obtained the permit for the project who requests an inspection. Lampman testified that sometimes he contacts the person who obtained the permit to get a verbal confirmation that the request for inspection had been made, but at other times he simply "trust[s]" that the person who obtained the permit also requested final inspection. CP at 654.

Lampman testified that he spoke with Glen Thomas before the White River School District project commenced and discussed the need to obtain a permit, which Thomas later obtained. Lampman was aware that a final inspection would need to be requested. Lampman did not believe that anyone called the Department requesting an inspection for the project, he did not know whether Thomas ever requested an inspection for the project, and he never discussed the request for inspection with Thomas after the project's completion. Also, Lampman did not check to see whether a request for inspection was made before Boespflug contacted him in

5

October 2013. Lampman testified that either he or another Potelco employee made a request for inspection after Boespflug contacted him.

The ALJ entered an order affirming both citations. The ALJ entered the following findings of fact:

> 4.9. The electrical work performed by Potelco at the job site was completed on July 17, 2013.
>
> 4.10. The electrical work performed by Potelco at the job site was energized on or before July 18, 2013.
>
> 4.11. As of October 9, 2013, prior to a telephone call from John Boespflug to Jeff Lampman, no request had been made for a final inspection of the electrical work performed by Potelco at the job site.
> . . . .
>
> 4.13. Jeff Lampman has been the electrical administrator for Potelco since 2005. On August 31, 2010, Mr. Lampman conducted an Electrical Safety Presentation for Potelco. Mr. Lampman circulates at Potelco the periodic electrical newsletter produced by the Electrical Division of the Department.
>
> 4.14. Generally at Potelco, the person who obtains an electrical permit is responsible for requesting a final inspection. Sometimes it is the responsibility of the electrical administrator. The electrical administrator will usually contact the person who obtained the electrical permit and get a verbal confirmation that a request for a final inspection request was put in. Other times, the electrical administrator will trust that the inspection request will be handled by the person who obtained the electrical permit.
>
> 4.15. In the present case, Potelco employee Glen Thomas obtained the permit for the electrical work performed by Potelco at the job site. Jeff Lampman did not know whether Mr. Thomas requested a final inspection. Mr. Lampman did not check to see if an inspection had been requested until after he had been contacted by John Boespflug on October 9, 2013.
>
> 4.16. After being advised on October 9, 2013, that no inspection had been requested for the electrical work performed by Potelco at the job site, someone at Potelco requested an inspection. A final inspection took place and no corrective actions were requested.

CP 553-54. The ALJ entered the following conclusions of law:

5.4. In the present case, Potelco completed its electrical work at the job site on July 17, 2013; the installation was energized no later than July 18, 2013. Potelco did not request an inspection of the electrical work at the job site until after October 9, 2013, more than two months after the electrical work was completed and energized. Therefore, the Department has proven Potelco failed to request an inspection within three business days after the completion of the installation or one business day after energizing, whichever occurred first, which failure was a violation of RCW 19.28.101, as alleged by the Department in its Non-Compliance Citation No. EMOES00792.[3]

5.6. As electrical administrator, Jeff Lampman was responsible for ensuring all electrical work performed by Potelco complied with the electrical installation laws and rules of the state, including requesting inspections within the required time frames under WAC 296-46B-901(9). In the present case, an inspection of the electrical work performed by Potelco at the job site was not requested until more than two months after the work was completed and energized. Jeff Lampman did not know whether Glen Thomas requested a final inspection of Potelco's electrical work at the job site, and Mr. Lampman did not check to see if final inspection had been requested until after he had been contacted by John Boespflug on October 9, 2013 Mr. Lampman's minimal actions taken to ensure a timely final inspection of Potelco's electrical work at the job site were insufficient to ensure the electrical work by Potelco complied with the electrical installation laws and rules of the state. Therefore, Mr. Lampman is liable for a failure to ensure all electrical work done by Potelco at the job site complied with the electrical laws and rules of the state, which failure was a violation of RCW 19.28.061(5)(b), as alleged by the Department in its Non-Compliance Citation No. EMOES00793.[4]

5.10. The statutory requirement for strict conformity with applicable statutes and regulations, the absence of statutory or regulatory language providing for discretionary enforcement of applicable statutes and regulations, and the threat to the health, safety and welfare of the general public posed by unpermitted electrical work, all support the imposition of strict liability for a

---

[3] The OAH's findings of fact, conclusions of law, and initial order mistakenly noted the citation number EBOES00792 as citation number EMOES00792. This mistake was rectified by the Board in its final order.

[4] The OAH's findings of fact, conclusions of law, and initial order mistakenly noted the citation number EBOES00793 as citation number EMOES00793. This mistake was rectified by the Board in its final order.

> failure to obtain required electrical permits prior to commencing electrical work.[5]

CP 555-56. The ALJ also concluded that the Department's imposition of penalties for both citations was correct.

Potelco and Lampman timely appealed the ALJ's decision to the Board. Although five members of the Board considered that Potelco properly requested an inspection, a majority of the Board, by a vote of 7 to 5, concluded that Potelco did not request a final inspection and that Lampman did not ensure that Potelco's work complied with electrical laws. In its final order, the Board adopted the ALJ's initial order in major part but struck conclusion of law 5.10 and adopted the following language:

> "The statutory requirement of strict conformity contained in RCW 19.28.010(1) addresses technical requirements and does not require strict liability for electrical administrator."

CP at 789.

Potelco and Lampman then sought review in the Pierce County Superior Court. The superior court affirmed the Board's order and concluded that the Board's findings of fact were supported by substantial evidence and that the conclusions of law were not erroneous. The superior court also awarded the Department $200 in statutory attorney fees. Potelco and Lampman appeal.

---

[5] Although the ALJ's order mentions "failure to obtain required electrical permits prior to commencing electrical work," the order, read in its entirety, is clearly referring to the failure to request an inspection.

ANALYSIS

Potelco and Lampman argue that the Board erred in concluding that Potelco failed to request an inspection within three days of completing electrical work, or within one day of energizing electrical lines under WAC 296-46B-901(9)(a). Potelco and Lampman also argue that the Board erred in concluding that Lampman failed to ensure that all electrical work complied with electrical installation laws under RCW 19.28.061(5)(b). We disagree with these arguments and affirm the Board's order.

I. GENERAL LEGAL PRINCIPLES

Under the Washington Administrative Procedure Act, chapter 34.05 RCW, we directly review the Board's decision based on the record before the agency to determine whether substantial evidence supports the Board's decision. *Pilchuck Contractors, Inc. v. Dep't of Labor & Indus.*, 170 Wn. App. 514, 517, 286 P.3d 383 (2012). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. *Pilchuck Contractors*, 170 Wn. App. at 517. We do not reweigh the evidence. *See Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002).

Our review is limited to examining the record to see whether substantial evidence supports the findings of fact and whether the Board's conclusions of law flow from these findings. *Nelson v. Washington State Dep't of Labor & Indus.*, 175 Wn. App. 718, 723, 308 P.3d 686 (2013). Unchallenged findings of fact are verities on appeal. *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006).

## II. THE BOARD'S FINDINGS OF FACT ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

Although Potelco and Lampman argue that the Board's findings of fact are not supported by substantial evidence, it appears that they are actually arguing that the Board's conclusions of law are not supported by substantial evidence. They argue that because Potelco's crew interpreted their conversation with Boespflug to be a request to inspect their final work, they, in fact, requested an inspection. This argument is unpersuasive. Instead, we apply the appropriate standard of review and hold that the Board's findings are supported by substantial evidence and that the Board's conclusions of law are supported by those findings.

An appellant must separately assign error to each finding of fact he challenges on appeal and must identify each challenged finding by number. RAP 10.3(g)-(h). Liberally interpreting RAP 10.3, we may in our discretion review findings to which the appellant fails to properly assign error as long as the appellant has identified those findings and the nature of his challenges to them elsewhere in the brief. *See Bircumshaw v. State*, 194 Wn. App. 176, 198-99, 380 P.3d 524 (2016).

Here, Potelco and Lampman fail to expressly assign error to any findings of fact, which begin at paragraph 4.1 and end at paragraph 4.16 of the initial order. Rather, Potelco and Lampman assign error to paragraphs 2.1 and 2.2 of the summary section of the initial order. However, we exercise our discretion to review the statements contained in these summaries as findings of fact. *See Bircumshaw*, 194 Wn. App. at 198-99. Paragraph 2.1 states:

> 2.1. Potelco failed to request an inspection within three business days after the completion of the installation or one business day after energizing, whichever occurred first, as alleged by the Department in its Non-Compliance Citation No. EMOES00792, and therefore is liable for a civil monetary penalty in the amount of $250.00 based upon that citation.

CP at 155.  Paragraph 2.2 states:

> 2.2. Jeff Lampman failed to ensure all electrical work complied with the electrical laws and rules of the state, as alleged by the Department in its Non-Compliance Citation No. EMOES00793, and therefore is liable for a civil monetary penalty in the amount of $100.00 based upon that citation.

CP at 156.

Regarding paragraph 2.1, substantial evidence exists to support the finding that "Potelco failed to request an inspection within three business days after the completion of the installation or one business day after energizing, whichever occurred first."   The record shows that no Potelco employee made a request for inspection at any time prior to October 9, 2013, when inspector Boespflug contacted Lampman for failing to request an inspection.  Boespflug testified that he did not conduct an inspection while he was present at the work site and that no employee requested an inspection while he was at the work site.  Further, Lampman testified that he or another employee requested an inspection only after Boespflug had contacted him in October 2013.  Thus, the Board's finding in paragraph 2.1 is supported by evidence sufficient to persuade a fair-minded person of the truth or correctness of the finding.  *See Pilchuck Contractors*, 170 Wn. App. at 517.

Regarding paragraph 2.2, substantial evidence exists to support the finding that "Jeff Lampman failed to ensure all electrical work complied with the electrical laws and rules of the state."  Lampman testified that after a project's completion, he sometimes requests an inspection and at other times the person who obtained the permit for the project requests the inspection. Lampman also testified that sometimes he contacts the person who obtained the permit to get a verbal confirmation that the request for inspection had been made, but at other times he simply "trusts" that the person who obtained the permit also requested final inspection.

11

As to the specific project at issue, Lampman testified that he was aware that a final inspection would need to be requested. Lampman also testified that he did not believe that anyone called the Department requesting an inspection, he did not know whether Glen Thomas ever requested an inspection, and he never discussed the request for inspection with Thomas after the project's completion. Lampman further testified that he did not check to see whether a request for inspection was made before Boespflug contacted him in October 2013. This evidence is sufficient to persuade a fair-minded person of the truth of the finding that Lampman did not ensure that all electrical work complied with the applicable laws and rules of the State. Thus, sufficient evidence supports the Board's finding.

Evidence exists in a sufficient quantum to persuade a fair-minded person of the truth of the challenged findings. Thus, Potelco and Lampman's challenges to the findings of fact fail.

### III. THE BOARD'S CONCLUSIONS OF LAW ARE CORRECT AND ARE SUPPORTED BY THE FINDINGS OF FACT

Potelco and Lampman argue that the Board erred in adopting conclusion of law 5.4., which states that Potelco failed to request an inspection under WAC 296-46B-901(9)(a). Potelco and Lampman also argue the Board erred in adopting conclusion of law 5.6., which states that Lampman did not fulfill his duties as required under RCW 19.28.061(5)(b). We disagree.

A.    *Legal Principles*

We review the Board's conclusions of law de novo. *Whatcom Cty. v. Hirst*, 186 Wn.2d 648, 667, 381 P.3d 1 (2016). An appellant is entitled to relief if the Board erroneously interpreted or applied the law, if the conclusions are not supported by the findings, or if the decision is inconsistent with an agency rule. *Clausing v. State*, 90 Wn. App. 863, 870, 955 P.2d 394, *review denied*, 136 Wn.2d 1020 (1998). We give substantial weight to an agency's

interpretation of regulations and statutes within its area of expertise and we uphold that interpretation if it is a plausible construction of the regulation and not contrary to legislative intent. *J&S Servs., Inc. v. Dep't of Labor & Indus.*, 142 Wn. App. 502, 506, 174 P.3d 1190 (2007).

In determining legislative intent, we first examine the plain language of the statute or regulation. *State v. K.L.B.*, 180 Wn.2d 735, 739, 328 P.3d 886 (2014). If a statute or regulation is unambiguous, meaning it is subject to only one reasonable interpretation, our inquiry ends. *K.L.B.*, 180 Wn.2d at 739. We determine the plain language of the statute or regulation from the ordinary meaning of the language, the general context of the statute or regulation, the related provisions, and the statutory or regulatory scheme as a whole. *State v. Budik*, 173 Wn.2d 727, 733, 272 P.3d 816 (2012). We may consult a dictionary to determine the plain meaning of an undefined term. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). Where a term is not defined in a statute, it is presumed that the legislature intended it to mean what it did at common law. *State v. Torres*, 151 Wn. App. 378, 384, 212 P.3d 573 (2009). An ambiguity exists if there is more than one reasonable interpretation of the regulation. *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.*, 168 Wn.2d 421, 433, 228 P.3d 1260 (2010).

B.    *Potelco Failed To Request Final Inspection Under WAC 296-46B-901(9)(a)*

Without expressly asserting that the Board incorrectly interpreted WAC 296-46b-901(9)(a), Potelco and Lampman argue that the regulation provides no guidance on the method or procedure for requesting an inspection and that the regulation only requires that a request for inspection be made within a certain time frame. We hold that under the regulation's plain

language, a request for a final inspection is valid if made only after a project is energized or is completed.[6]

The purpose of chapter 19.28 RCW is to safeguard the public from dangerous electrical installations and unscrupulous electrical contractors.  *Nat'l Elec. Contractors Ass'n, Cascade Chapter v. Riveland*, 138 Wn.2d 9, 17, 978 P.2d 481 (1999).  When certain electrical work is conducted, installers must comply with WAC 296-46B-901(9)(a). That regulation provides:

> (9) Requests for inspections.
> (a) Requests for inspections must be made no later than three business days after completion of the electrical/telecommunications installation or one business day after any part of the installation has been energized, whichever occurs first.

WAC 296-46B-901(9)(a).  The plain language of the provision states that a request for inspection must be *after* one of the two triggering events occurs.  *Webster's* defines "after" as "later than a particular time or period of time: following the expiration of."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 38 (2002).

The use of the word "after" in the regulation means that a request for inspection must occur following either the completion of the project or the energizing of the project.  WAC 296-46B-901(9)(a).  Therefore, to find that Potelco committed the infraction, the Department had to

---

[6] Potelco and Lampman argue, for the first time in their reply brief, that a reasonable interpretation of the regulation simply requires that the work site be inspected upon completion of the project and that here, Potelco properly requested an inspection because Boespflug inspected the work site as the crew was completing the project.  We do not consider issues argued for the first time in the reply brief.  *Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App. 52, 78 n.20, 322 P.3d 6 (2014).  Even if we were to consider it, this argument in not persuasive.  As discussed below, the regulation plainly requires that a request for inspection must be made "after" completion of the project.  The plain language of the statute does not support the interpretation that a request for inspection can be made prior to completion or prior to energizing the project.

establish that Potelco failed to request an inspection no later than three days following the completion of the project or within one day following the project becoming energized. *See* WAC 296-46B-901(9)(a). WAC 296-46B-901(9)(a) is not ambiguous and there is no need for judicial interpretation beyond its plain language.

Here, the Board correctly interpreted the regulation as requiring Potelco to request an inspection following either the completion or energizing of the project. It is clear from findings of fact that Potelco made no request for an inspection following the completion of the project or after the project became energized. Consequently, the Board's findings support its conclusion that Potelco failed to request an inspection as required in WAC 296-46B-901(9)(a).

Potelco and Lampman make additional arguments regarding the validity of their request for inspection. They argue that because Potelco's crew interpreted the conversation with Boespflug as a request to inspect their final work, that Potelco properly requested an inspection as required by WAC 296-46B-901(9)(a). But this case does not turn on Potelco's crew's subjective understanding of their conversations with Boespflug.

Here, while the Potelco crew may have believed that their conversations with Boespflug constituted a request for inspection, WAC 296-46B-901(9)(a) requires that a request for inspection be made within three days after completion of a project or within one day of energizing a project. The conversations between the Potelco crew members and Boespflug took place before completion and before energization of the project. The Board found that Potelco made no request for inspection until over two months after Potelco's crew completed and energized the project. Accordingly, Potelco and Lampman's argument that the crew's belief that its conversations with Boespflug constituted a request for inspection fails.

Potelco and Lampman further assert that five members of the Board agreed that Potelco made a final request for inspection under the circumstances present in this case. However, the fact that the Board's decision was not unanimous has no bearing on our review. *See Snohomish Cty. v. Hinds*, 61 Wn. App. 371, 384, 810 P.2d 84, 90 (1991) (holding that isolated comments by individual board members do not invalidate a board's factual findings so long as those findings are supported by substantial evidence). The Board determined that Potelco did not make a request for inspection after the project was completed or after it was energized as required under WAC 296-46B-901(9)(a). That conclusion is supported by the findings of fact. It is of no consequence that some individual board members had a differing opinion.

WAC 296-46B-901(9)(a) is not ambiguous, and the Board correctly interpreted its meaning. The Board's interpretation is plausible and consistent with the legislative purpose to safeguard the public from dangerous electrical installations. *See J&S Servs., Inc.*, 142 Wn. at 506; *see also Nat'l Elec. Contractors*, 138 Wn.2d at 17. The Board's findings of fact support its conclusion that Potelco failed to request an inspection within three days after the installation was completed or within one day after the installation became energized. Accordingly, the Board properly interpreted and applied WAC 296-46B-901(9)(a) in affirming the Department's citation issued to Potelco.

C.  *Lampman Failed To Ensure Compliance Under RCW 19.28.064(5)(b)*

Potelco and Lampman also argue that Lampman took all reasonable steps to ensure Potelco's compliance with electrical rules, and therefore, the Board erred in affirming the Department's citation against Jeff Lampman for failing to ensure that all electrical work complied with electrical installation laws. This argument suggests that the Board misinterpreted

16

RCW 19.28.061(5)(b) in concluding that Lampman failed to ensure that Potelco complied with electrical law. We hold that the Board correctly interpreted and applied RCW 19.28.061(5)(b) in this case.

The statute provides:

(5) The designated master electrician or administrator shall:
(b) Ensure that all electrical work complies with the electrical installation laws and rules of the state.

RCW 19.28.061(5)(b).

This statute is unambiguous and its meaning is readily apparent from its language. "Ensure" is not defined in chapter 19.28. Nor have Washington cases interpreted the meaning of "ensure" for purposes of RCW 19.28.061(5)(b). *Webster's* defines "ensure" as "to make sure, certain, safe: Guarantee." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 756 (2002). *Webster's* defines "certain" as "given to or marked by complete assurance and conviction, lack of doubt, reservation, suspicion, or wavering through, or as if through infallible knowledge or perception." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 367 (2002).

From these definitions, it follows then that, a site administrator must make certain that all electrical work complies with the electrical installation laws and rules of the State. It then also follows that a site administrator must make sure and make certain that a request for inspection is made as required by WAC 296-46B-901(9)(a), being that WAC 296-46B-901(9)(a) is an electrical law of this state.

Here, the Board concluded that Lampman, as the electrical administrator, was responsible for ensuring all electrical work performed by Potelco complied with the electrical installation laws and rules. The Board's findings support its conclusion.

17

The Board found that Lampman did not know whether Glen Thomas requested a final inspection and that Lampman did not check to see if a final inspection had been requested until after Boesfplug contacted him in October 2013. The Board also found that Lampman took "minimal actions" to ensure that the electrical work complied with electrical laws. CP at 159. Consequently, the Board's findings support the Board's conclusion that Lampman did not make sure or provide complete assurance that Potelco complied with the specific electrical law requiring Potelco to request an inspection after completing or after energizing the project.

Potelco and Lampman make additional arguments regarding Lampman's duties under RCW 19.28.061(5)(b). Potelco and Lampman argue that Lampman fulfilled his duty to ensure compliance with electrical laws under RCW 19.28.061(5)(b) because he conducted electrical safety presentations, instructed employees to follow electrical laws, provided compliance training, reminded employees through e-mails and online updates of compliance requirements, and reviewed contracts. Although Lampman made some efforts to ensure that Potelco complied with electrical laws, under the plain meaning of the statute, the term "ensure" does not mean that a site administrator fulfills his duty to make certain that all electrical work complies with electrical laws by giving presentations and trainings, or sending e-mail updates. Thus, this argument fails.

The Board correctly interpreted RCW 19.28.061(5)(b). The Board's interpretation is plausible and consistent with the legislative purpose to safeguard the public from dangerous electrical installations. *See J&S Servs., Inc.*, 142 Wn. at 506; *see also Nat'l Elec. Contractors*, 138 Wn.2d at 17. The Board's findings of fact support the Board's conclusion that Lampman did not ensure compliance with electrical laws as required by RCW 19.28.061(5)(b).

18

Accordingly, we hold that the Board properly interpreted and applied RCW 19.28.061(5)(b) in affirming the Department's citation issued to Lampman.[7]

IV. UPHOLDING LAMPMAN'S CITATION DID NOT SUBJECT HIM TO STRICT LIABILITY

Potelco and Lampman also argue that the Board's conclusion that Lampman failed to ensure that Potelco's work complied with electrical laws improperly subjected Lampman to strict liability for all mistakes made on work sites and that the legislative history of the statute does not support holding a site administrator strictly liable for the mistakes of other employees. We disagree.

To support their argument, Potelco and Lampman cite only criminal cases in what appears to be an attempt to show that the Board's decision to affirm Lampman's citation unfairly subjects a site administrator to strict liability for all mistakes, even those made by other employees. Potelco and Lampman's arguments misconstrue the Board's order.

Here, the Board explicitly determined that RCW 19.28.061(5)(b) was not to be interpreted as a strict liability statute. After its review of the ALJ's initial order, which concluded that RCW 19.28.061(5)(b) did act as a strict liability statute, the Board struck that conclusion and adopted the following language:

> The statutory requirement of strict conformity contained in RCW 19.28.010(1) addresses technical requirements and does not require strict liability for electrical administrators.

---

[7] Potelco and Lampman also contest the Board's conclusions 5.11-5.15 as to penalties but make no argument as to how the Board erred in imposing the penalties. We therefore do not address this argument. *See West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (holding that courts will not consider conclusory arguments that do not cite factual and legal authority).

19

CP at 789. Therefore, the Board did not interpret or apply RCW 19.28.061(5)(b) as imposing strict liability on Lampman for the mistakes of other employees. Rather, the Board, under the specific facts of this case, held Lampman liable for his own failure in ensuring that Potelco's electrical work complied with all electrical laws, namely requesting an inspection, as he was required to do as a site administrator under RCW 19.28.061(5)(b).

Because the Board upheld Lampman's citation due to his minimal actions to ensure Potelco's compliance with electrical installation laws, the Board did not improperly interpret or apply RCW19.28.061 as a strict liability statute. Accordingly, we hold that Potelco and Lampman's strict liability arguments fail.

## V. STATUTORY ATTORNEY FEES

The superior court awarded the Department, as the prevailing party $200 in statutory attorney fees. Potelco and Lampman assert that the superior court erred in granting statutory attorney fees, but they do not provide any argument as to how the court erred in granting the fees. RCW 4.84.030[8] allows the superior court to award costs to the prevailing party, and under RCW 4.84.080,[9] those costs include a nominal statutory attorney fee award of $200. The record

---

[8] RCW 4.84.030 provides:
> In any action in the superior court of Washington the prevailing party shall be entitled to his or her costs and disbursements; but the plaintiff shall in no case be entitled to costs taxed as attorneys' fees in actions within the jurisdiction of the district court when commenced in the superior court.

[9] RCW 4.84.080 provides:
> When allowed to either party, costs to be called the attorney fee, shall be as follows:
>     (1) In all actions where judgment is rendered, two hundred dollars.
>     (2) In all actions where judgment is rendered in the supreme court or the court of appeals, after argument, two hundred dollars.

shows that the Department was the prevailing party below. Thus, we affirm the superior court's award of costs in the form of statutory attorney fees to the Department.

We affirm the Board's order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J

We concur:

Lee, J.

Sutton, J.