IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ERASMUS BAXTER, ASIA FIELDS, and JULIA FURUKAWA, | ) ) ) | No. 82418-0-I |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| WESTERN WASHINGTON UNIVERSITY, an agency of the State of Washington, | ) ) ) ) | PUBLISHED OPINION |
| Respondent, | ) ) ) | |
| JOHN DOES 2, 3, 4, and 6, | ) ) | |
| Appellants. | ) ) ) | |

VERELLEN, J. — In this Public Records Act dispute, three journalists requested the "final results" of "disciplinary proceedings" including the student's name where Western Washington University had determined a student was responsible for a crime of violence or nonforcible sex offense in the last five years. Four students appeal the trial court's determination that the "final results" including the names of the students are subject to public disclosure.

Washington's Public Records Act (PRA) mandates broad public disclosure.[1] Its exemptions are to be construed narrowly to ensure that the public interest is fully

---

[1] Ch. 42.56 RCW.

protected. We conclude the disciplinary results are not exempt from disclosure under RCW 42.56.230(1), the "public schools student file" exemption, because the term "public schools" as used in that exemption does not contemplate postsecondary educational institutions.

We also conclude the PRA "other statute"[2] exemption does not extend to the Family Educational Rights and Privacy Act of 1974 (FERPA) here because the "final results" exception to FERPA allows disclosure of the "final results of any disciplinary proceeding" where the alleged student committed "any crime of violence" or "nonforcible sex offense" in violation of the institution's rules or policies.[3]

And Washington state regulations governing disciplinary proceedings at the university pursuant to the university's student code of conduct stand alone and therefore do not constitute an "other statute" exemption under the PRA.

Finally, the students do not establish an actionable lack of notice that their disciplinary results could be disclosed under the PRA.

We affirm.

FACTS

Between 2013 and 2018, John Does 1 through 7 committed various crimes of violence and/or nonforcible sex offenses while they were students, in violation of the university's student code of conduct.

---

[2] RCW 42.56.070(1).

[3] 20 U.S.C. § 1232g.

On October 10, 2018, three journalists, Erasmus Baxter, Asia Fields, and Julia Furukawa, sent a public records request to the university's public records officer, Dolapo Akinrinade. The journalists' request stated:

> Under Washington's Public Records Act, we would like to request the final results, including the student's name, of disciplinary proceedings where Western has determined a student was responsible for a crime of violence or nonforcible sexual offense in the last five years. If you deny any part of this request, please cite the specific exemption that applies.[4]

In response, university officials used Symplicity Advocate, a software tool, "to create a spreadsheet containing data potentially responsive to the request."[5]

On November 8, 2018, "[a]fter conducting research and verifying that the documents were responsive," Akinrinade provided the journalists with "(i) a table of sexual misconduct offenses and resulting discipline imposed, with the names of the offenders redacted, (ii) a table of violent offenses and resulting discipline imposed, with the names of the offenders redacted, and (iii) an exemption log."[6] The university noted in the exemption log that it found the names of students exempt from disclosure under RCW 42.56.230(1) of the PRA.

On May 6, 2019, the journalists filed suit against the university seeking a court order to compel the university to produce the student names.

At some point after this lawsuit was filed, the university determined that the names of the students were not exempt from disclosure. That summer, the university

---

[4] Clerk's Papers (CP) at 144.

[5] CP at 240.

[6] CP at 2, 220.

advised each of the involved students it intended to disclose student names in an unredacted version of the response previously provided, and the students had the opportunity to intervene and seek injunctive relief. Seven students intervened. The students and the journalists stipulated that the university would "not release the requested records relating to John Does 1-7 without redacting the intervenor Does' names until such date as the superior court rules on the question of whether those records are exempt or not, unless otherwise agreed."[7]

That August, the university sent a letter to the journalists and the students stating, "With the exception of John Doe Plaintiffs 1-7 who have intervened in the lawsuit, the updated response will include the unredacted names of the students whose records were responsive" to the request.[8] Before the university released the updated response, it "again reviewed the records to re-verify that the underlying behavior . . . for each student at issue fell within the definitions of a crime of violence or nonforcible sexual offense as set forth in 34 CFR 99.39."[9] The university issued the updated response disclosing the name of each student who committed a "crime of violence" or "nonforcible sex offense" and the discipline imposed with only the names of Does 1-7 redacted.

Does 1-7 filed motions for injunctive relief in accordance with RCW 42.56.540, and the journalists filed a cross motion for partial summary judgment. On August 10,

---

[7] CP at 29.
[8] CP at 268.
[9] CP at 240.

2020, the trial court issued its oral decision. That October, the trial court issued an order denying the Does' motions for injunctive relief and granting the journalists' cross motion for summary judgment. In its written decision, the court noted that Does "failed to carry their burden of proof to establish that the names of the students whose offenses are listed in the tables provided by [the university] to the Plaintiffs are exempt under either the [PRA] or [FERPA]."[10]

The trial court entered a partial judgment certified under CR 54(b) to enable Does 1-7 to immediately appeal the court's decision without having to wait for the final resolution of the journalists' claims against the university.[11]

Does 2, 3, 4, 5, and 6 (the students) petitioned for direct review to the Supreme Court.[12] The Supreme Court denied the students' petition and transferred the case to this court.[13]

## ANALYSIS

The students argue that the trial court erred in denying their motions for injunctive relief because they contend the PRA cannot "be used as a tool to acquire the names of students who have been disciplined by a public university."[14] We

---

[10] CP at 338.

[11] The journalists' claims against the university have been stayed and remain pending before the trial court.

[12] Doe 1 and Doe 7 sought declaratory and injunctive relief before the trial court but did not appeal.

[13] On October 11, 2021, Doe 5 withdrew his appeal.

[14] Br. of Appellants at 2-3.

review agency actions "taken or challenged" under RCW 42.56.030 through .520 de novo.[15]

The "'fundamental objective'" of statutory interpretation is to "'ascertain and carry out'" the legislature's intent.[16] "In determining the meaning of the statutory exemption at issue, we apply general principles of statutory construction."[17] "These principles begin with the premise that if a statute is plain and unambiguous, its meaning must be derived from the language of the statute itself."[18]

Generally, "the PRA mandates broad public disclosure"[19] and "gives the public access to the public records of state and local agencies, with the laudable goals of governmental transparency and accountability."[20] "The PRA is 'liberally construed' and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected."[21] To that end, "[t]he PRA requires

---

[15] RCW 42.56.550(3).

[16] Servais v. Port of Bellingham, 127 Wn.2d 820, 830, 904 P.2d 1124 (1995) (quoting Rozner v. Bellevue, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)).

[17] Limstrom v. Ladenburg, 136 Wn.2d 595, 606, 963 P.2d 869 (1998) (citing Harmon v. Dep't of Soc. & Health Servs., 134 Wn.2d 523, 530, 951 P.2d 770 (1998); Western Petroleum Importers, Inc. v. Friedt, 127 Wn.2d 420, 423, 899 P.2d 792 (1995)).

[18] Id. (citing State v. Mollichi, 132 Wn.2d 80, 87, 936 P.2d 408 (1997); Marquis v. City of Spokane, 130 Wn.2d 97, 107, 922 P.2d 43 (1996)).

[19] White v. Clark County, 188 Wn. App. 622, 631, 354 P.3d 38 (2015) (citing Sargent v. Seattle Police Dep't, 179 Wn.2d 376, 385, 314 P.3d 1093 (2013)).

[20] City of Federal Way v. Koenig, 167 Wn.2d 341, 343, 217 P.3d 1172 (2009).

[21] Fisher Broad.-Seattle TV LLC v. City of Seattle, 180 Wn.2d 515, 521, 326 P.3d 688 (2014) (citing RCW 42.56.030).

agencies to disclose any public record on request unless the record falls within [an] exemption."[22]

"There are three sources of PRA exemptions. First, the PRA itself contains specific enumerated exemptions" in sections .210 through .480.[23] Second, public records can be withheld if they fall within an "other statute" which exempts or prohibits disclosure of the specific information or records.[24] "Third, the Washington Constitution may exempt certain records from production because the constitution supersedes contrary statutory laws."[25] Only the first two sources are relevant here.

I. Student File Exemption

The "student file" exemption, RCW 42.56.230(1), provides, "Personal information in any files maintained for students in public schools" is "exempt from public inspection and copying under this chapter." The students argue that the unredacted disciplinary results are categorically exempt from disclosure.

In Lindeman v. Kelso School District No. 458, our Supreme Court relied upon dictionary definitions to conclude that "'personal information' means 'of or relating to a

---

[22] Freedom Found. v. Wash. State Dep't of Transp., Div. of Wash. State Ferries, 168 Wn. App. 278, 287, 276 P.3d 341 (2012) (citing Neighborhood Alliance of Spokane County v. Spokane County, 172 Wn.2d 702, 715, 261 P.3d 119 (2011)).

[23] White, 188 Wn. App. at 630-31 (citing Dep't of Transp. v. Mendoza de Sugiyama, 182 Wn. App. 588, 596, 330 P.3d 209 (2014)).

[24] RCW 42.56.070(1).

[25] White, 188 Wn. App. at 631 (citing Freedom Found. v. Gregoire, 178 Wn.2d 686, 695, 310 P.3d 1252 (2013)).

particular person,'" "'affecting one individual,'" "'affecting each of many individuals,'" "'peculiar or proper to private concerns,'" and "'not public or general.'"[26]

Here, the students contend, and the journalists agree, that the unredacted disciplinary results including student names contain "personal information" as defined in section .230(1).[27]

But the students and the journalists disagree whether the unredacted disciplinary results were located in files maintained for students as contemplated by section .230(1). The students argue that because the PRA request here involves information that was "compiled by reviewing disciplinary records," the unredacted disciplinary results are "by their very nature maintained in student files" and are distinct from the videotape at issue in Lindeman.[28]

In Lindeman, two elementary school students engaged in an altercation on a school bus.[29] A surveillance video camera was installed on the bus and recorded the altercation.[30] The parents of one of the students sent a formal request to the district seeking disclosure of the videotape under the PRA.[31] The district denied the parents'

---

[26] Lindeman v. Kelso School District No. 458, 162 Wn.2d 196, 202, 172 P.3d 329 (2007) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1686 (2002)).

[27] See Br. of Resp'ts Baxter et al. at 18-19; Wash. Court of Appeals oral argument, Baxter et al., v. Western Washington University, No. 82418-0-I (Nov, 5, 2021), at 17 min., 48 sec., through 17 min., 56 sec. https://www.tvw.org/watch/?clientID=9375922947&eventID=2021111017&autoStartStream=true.

[28] Br. of Appellants at 19.

[29] Lindeman, 162 Wn.2d at 199.

[30] Id.

[31] Id. at 199-200.

request, stating that the videotape was exempt from disclosure under the "student file" exemption.[32]  The parents sued the district, arguing that the district violated the PRA by failing to disclose the videotape.

Our Supreme Court held that the videotape was subject to disclosure because it was a "surveillance tape," not a "student record," and therefore, it was not a "file maintained for students."[33]  The court noted that the physical location of the information is not determinative and that "[e]ven if the [d]istrict ultimately used the videotape as the basis for disciplining the student who committed the assault, the videotape itself would not thereby be converted into personal information in files maintained for students since the videotape does not reveal whether discipline was or was not imposed."[34]

The court reasoned,

> The phrase "files maintained for students in public schools" denotes the collection of individual student files that public schools necessarily maintain for their students.  The student file exemption contemplates the protection of material in a public school student's permanent file, such as a student's grades, standardized test results, assessments, psychological or physical evaluations, class schedule, address, telephone number, social security number, and other similar records.[35]

Here, unlike the videotape at issue in Lindeman, the unredacted disciplinary results contained "personal information" located in "files maintained for students." The disciplinary results were maintained on the university's computer system and

---

[32] Id.

[33] Id. at 203.

[34] Id.

[35] Id. at 202.

accessed with Symplicity Advocate, an online software tool that manages the disciplinary records of the university's students, including the names of students who were responsible for a "crime of violence or nonforcible sexual offense in the last five years." The unredacted disciplinary results are simply the compilation of selected portions of the disciplinary files maintained for students.

The journalists contend that because the "tables list numerous offenses by numerous students[,] these records obviously are not part of any particular student's education records" and therefore are not "in files maintained for students."[36] But even though the unredacted disciplinary results contain the information for more than one student, that does not mean the individual disciplinary results are not in files maintained for students. Along with assessments, achievements and evaluations, a disciplinary record that a student committed a serious violation of the student code of conduct would logically and reasonably be located in a student's permanent file. We conclude the compilation of disciplinary results sought here for several students are "in files maintained for students."

Finally, we must decide whether "public schools" as prescribed by section .230(1) includes the university. The students argue that "a plain reading of the PRA compels a conclusion that Washington's public universities and colleges—such as WWU—should be treated no differently than any other public schools."[37] In essence, the students dismember the statutory phrase "public schools" to separately analyze,

---

[36] Br. of Resp'ts Baxter et al. at 19.

[37] Reply Br. of Appellants at 4.

first, whether the university is a "school" and second, whether it is "public" rather than private.

"Where the legislature has not defined a term, [we] will give the term its plain and ordinary meaning ascertained from a standard dictionary."[38] "When determining a statute's plain meaning, we consider 'the ordinary meaning of words, the basic rules of grammar, and the statutory context to conclude what the legislature has provided for in the statute.'"[39] We also examine related statutory provisions.[40] Further, individual words should not be read in isolation; the plain meaning of two words used in sequence is sometimes more than the simplest and broadest meaning of those words when viewed individually.[41] The plain and precise meaning of two words used in conjunction is part of the context recognized under the plain meaning rule.[42]

"A statute is ambiguous when it is susceptible to two or more reasonable interpretations, but a statute is not ambiguous merely because different

---

[38] Cornu-Labat v. Hosp. Dist. No. 2 Grant County, 177 Wn.2d 221, 231, 298 P.3d 741 (2013) (internal quotation marks omitted) (quoting State v. Watson, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)).

[39] Citizens Alliance for Property Rights Legal Fund v. San Juan County, 184 Wn.2d 428, 435, 359 P.3d 753 (2015) (quoting In re Forfeiture of One 1970 Chevrolet Chevelle, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009)).

[40] Cornu-Labat, 177 Wn.2d at 231.

[41] State v. K.L.B., 180 Wn.2d 735, 742, 328 P.3d 886 (2014) (individual words should not be read in isolation); State v. Roggenkamp, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (the meaning of words may be indicated or controlled by those with which they are associated).

[42] K.L.B., 180 Wn.2d at 742; Roggenkamp, 153 Wn.2d at 623.

interpretations are conceivable."[43]  "If a statute is ambiguous, we may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent."[44]

The PRA does not define the term "public schools."  Webster's Third International Dictionary defines "public school" as:

> [(1)(a)] any of various endowed secondary boarding schools in Great Britain offering a classical curriculum and preparing boys [especially] for the ancient universities or for public service. [(b)] a similar school for girls.  [(2)(a)] a tax supported school controlled by a local governmental authority; [specifically] an elementary or secondary school in the U.S. providing free education for the children of residents of a specified area [and (b)] the building housing a public school.[45]

The students contend that "[i]t is far more likely that the legislature [meant] the common meaning [of] the term "public school" in the exemption with an understanding that it would be applied to Washington's universities."[46]  But as noted above, "plain meaning" is not limited to the most basic meaning of each word in isolation.  Rather, we should consider the standard dictionary definition of the precise term used in the statute.  Here "public school" has a dictionary definition limited to elementary or secondary schools providing free education for the children of

---

[43] State v. Gray, 174 Wn.2d 920, 927, 280 P.3d 1110 (2012) (internal quotation marks omitted) (quoting Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 498, 210 P.3d 308 (2009)).

[44] Five Corners Family Farmers v. State, 173 Wn.2d 296, 305-06, 268 P.3d 892 (2011) (internal quotation marks omitted) (quoting Res. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

[45] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1836 (2002) (emphasis added).

[46] Reply Br. of Appellants at 5.

residents of a particular area. The dictionary definition of the term "public school" does not extend to postsecondary educational institutions.[47] And related statutes in the PRA provide further support that the term "public schools" only refers to schools below the college or university level.

Our legislature has long recognized the divide between "higher education" involving colleges and universities under Title 28B RCW and "common school provisions" limited to "public schools" that exclude colleges or universities under Title 28A RCW. Specifically, in 2009, the legislature enacted RCW 42.56.320, the "educational information" section of the PRA, which references Title 28B, "higher education provisions," and Title 28A, "common school provisions."

Further, in 2020, the legislature enacted RCW 42.56.375, the "sexual misconduct in postsecondary educational institutions" section of the PRA, which also

---

[47] Although we need not rely on a legal dictionary to ascertain the "common meaning" of a nontechnical term, we note Black's Law Dictionary defines "public school" as "[a]n elementary, middle, or high school established under state law, regulated by the local state authorities in the various political subdivisions, funded and maintained by public taxation, and open and free to all children of the particular district where the school is located." BLACK'S LAW DICTIONARY 1613 (11th ed. 2019). At oral argument before this court, appellants' counsel argued that the plain and ordinary meaning of "public school" encompassed colleges and universities. In support of his assertion, he referenced two dictionary definitions of the term "school." Appellants' counsel noted that Black's Law Dictionary defines "school" as an "institution or place of public instruction" and that Merriam Webster's Dictionary defines "school" as "an institution for teaching children or a college or a university." See Wash. Court of Appeals oral argument, Baxter et al., v. Western Washington University, No. 82418-0 (Nov. 5, 2021), at 1 min., 35 sec. through 4 min., 2 sec., https://www.tvw.org/watch/?clientID=9375922947&eventID=2021111017&autoStartStream=true. But appellants' argument ignores the distinction between the terms "school" and "public schools." And the plain meaning rule does not compel us to ignore the most precise meaning of a term in the context of the entire statutory and constitutional scheme.

references Title 28B. Section .375 directly refers to RCW 28B.112.040, which under subsection (4) defines a "postsecondary educational institution" as "an institution of higher education as defined in RCW 28B.10.016." RCW 28B.10.016 subsection (2) notes that the university is a postsecondary educational institution and is specifically classified as a "regional university" under that provision.

More directly, when the legislature enacted Title 28A RCW "common school provisions" in 1969, it expressly defined "public schools" as "the common schools as referred to in Article IX of the state Constitution, charter schools established under chapter 28A.710 RCW, and those schools and institutions of learning having a curriculum below the college or university level as now or may be established by law and maintained at public expense."[48] We may look to the only statute defining "public schools" even though not contained in nor referenced by the PRA.[49]

Even if we deem the term "public schools" ambiguous, the rules of construction do not favor the students' perspective because the history surrounding the use of the term "public schools" is narrow and limited. Specifically, article 9,

---

[48] LAWS OF 1969, 1st Ex. Sess., ch. 223, § 28A.01.055.

[49] In Cornu-Labat v. Hospital Dist. No. 2 Grant County, our Supreme Court resolved the plain meaning of "peer review committee" in the PRA by referencing a statute unrelated to the PRA. 177 Wn.2d 221, 230-31, 298 P.3d 741 (2013). The court noted that the PRA provision referenced another statute, RCW 4.24.250, as involving a "peer review committee" but the referenced section did not define the term. Id. In ascertaining the plain meaning of "peer review committee," the court used the "only statute" to define "peer review committee," RCW 7.71.030, even though that definition was not contained in nor referenced by the PRA. Id. Using Title 7 RCW, the court held that because the definition of "peer review committee" as used in RCW 42.56.360 included nonphysicians, the records were exempt from disclosure under the PRA. Id. at 231-32, 234.

section 2 of the Washington Constitution states, "The Legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established."[50] And based upon article 9, section 4 of the Washington Constitution, our Supreme Court held in Gallwey v. Grimm that "universities" are not common "schools."[51]

When the electorate adopted and the legislature codified Initiative 276 in 1973, the "student file" exemption was one of few exemptions expressly included.[52] The very little "history" that exists for Initiative 276 does not include any express references to the intended meaning of "public schools" as used in the "student file" exemption.[53] But the related statutes in existence in 1973 expressly defined "public schools" to exclude colleges and universities.

---

[50] WASH. CONST. art. IV, § 2; Litchman v. Shannon, 90 Wash. 186, 186-88, 155 P. 783 (1916).

[51] 146 Wn.2d 455, 466, 48 P.3d 274 (2002).

[52] Initiative 276, LAWS OF 1973, ch. 1, § 31(1)(a).

[53] Voter pamphlet entries may provide "history" used to construe initiative provisions, see Amalgamated Transit Union Local 587 v. State, 142 Wn.2d 183, 205-06, 11 P.3d 762 (2000), but none is present here regarding the student file exemption. See Initiative 276, LAWS OF 1973, ch. 1, § 31(1)(a). Further, in a recent non-PRA decision, our Supreme Court noted that Washington Pattern Jury Instruction 50.62 defines "school" as "a school or institution of learning having a curriculum below the college or university level as established by law and maintained at public expense. The term 'school' also means a school maintained at public expense in a school district and carrying on a program from kindergarten through the twelfth grade, or any part thereof, including vocational education courses." (citing 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.62, at 1177 (4th ed. 2016)). And the court also acknowledged that "public school" is defined in RCW 28A.150.010. State v. Anderson, No. 98973-7, slip op. at 5, 11 (Wash. Nov. 18, 2021), http://www.courts.wa.gov/opinions/pdf/989737.pdf.

Therefore, under either the plain meaning, or the rules of construction applicable to resolve any ambiguity, the term "public schools" in the student file exemption only contemplates schools below the college and university level.

The unredacted disciplinary results are not exempt from disclosure under the "student file" exemption of RCW 42.56.230(1).

II.  Other Statute Exemption

"The 'other statute' exemption 'applies only to those exemptions explicitly identified in other statutes; its language does not allow a court to imply exemptions but only allows specific exemptions to stand.'"[54]  Where an exemption is not found in the PRA itself, we will find an "other statute" exemption "only when the legislature has made it explicitly clear that a specific record, or portions of it, is exempt or otherwise prohibited from production in response to a public records request."[55]  In Doe ex rel Roe v. Washington State Patrol, our Supreme Court stated, "Our review of Washington case law shows that courts consistently find a statute to be an 'other statute' when the plain language of the statute makes it clear that a record, or portions thereof, is exempt from production."[56]

First, the students rely upon FERPA as an "other statute" exemption.  "Federal education funding is often conditional on the institution's compliance with federal

---

[54] Doe ex rel. Roe v. Washington State Patrol, 185 Wn.2d 363, 372, 374 P.3d 63 (2016) (internal quotation marks omitted) (quoting Progressive Animal Welfare Soc. v. Univ. of Wash., 125 Wn.2d 243, 262, 884 P.2d 592 (1994)).

[55] Id. at 373.

[56] 185 Wn.2d 363, 375, 374 P.3d 63 (2016).

laws, including FERPA."[57]  Here, the university receives federal funding.[58]  Generally, "FERPA restricts school disclosure of students' education records and personally identifiable information."[59]  And "FERPA is an 'other statute' [under the PRA] if it expressly exempts the relevant records from disclosure."[60]

But the journalists and the university argue that an amendment to FERPA known as the "final results exception" expressly permits certain records of violent or sex offenses to be released to anyone.[61]  The "final results exception," 20 U.S.C. § 1232g(b)(6)(B), provides:

> Nothing in this section shall be construed to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student who is an alleged perpetrator of any crime of violence (as that term is defined in section 16 of Title 18), or a nonforcible sex offense, if the institution determines as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense.

Here, the university's code of conduct states, "The purpose of this student records policy is to establish rules and procedures that appropriately implement [FERPA]."[62]  The university's public records officer, Dolapo Akinrinade, after verifying

---

[57] West v. TESC Bd. of Trs., 3 Wn. App. 2d 112, 114-15, 414 P.3d 614 (2018) (citing 20 U.S.C. § 1232(g); 34 C.F.R. pt. 99).

[58] Id. at 114.

[59] Id. (citing 20 U.S.C. § 1232(g)).

[60] Id. at 119; Ameriquest Mort. Co. v. Office of Atty. Gen., 170 Wn.2d 418, 439-40, 241 P.3d 1245 (2010).

[61] Br. of Resp'ts Baxter et al. at 8; Br. of Resp't Western Washington University at 10.

[62] CP at 159; WAC 516-26-010.

which student violations of the university's code of conduct qualified under the final results exception, contacted the university's associate dean, Michael Sledge, who "again reviewed the records to re-verify that the underlying behavior fell for each student at issue . . . within the definitions of a crime of violence or nonforcible sexual offense as set forth in 34 CFR 99.39."[63]  After confirming that each student's conduct fell within the definition of a "crime of violence" or "nonforcible sexual offense" prohibited under the university's student code of conduct, Akinrinade and Sledge concluded that the unredacted disciplinary results were subject to disclosure under the "final results exception."  Stated another way, the journalists and the university contend the unredacted disciplinary results are not exempted from disclosure under FERPA, even though FERPA generally is an "other statute" for purposes of the PRA. We agree.

In response, the students argue that the "final results exception" is unconstitutionally vague because the terms "crime of violence" and "nonforcible sex offense" are insufficiently defined and, consistent with due process, the students may prevent the release of their disciplinary records.

In the criminal context, a statute is unconstitutionally vague if it "'does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed'" or it "'does not provide ascertainable

---

[63] CP at 220, 240.

18

standards of guilt to protect against arbitrary enforcement.'"[64]  "When determining whether a statute provides fair warning of the proscribed conduct, we examine the context of the entire enactment, giving the language a "'sensible, meaningful, and practical interpretation.'"[65]  In King County Department of Adult and Juvenile Detention v. Parmelee, in rejecting a constitutional vagueness challenge to the PRA, the Court of Appeals noted that "absolute specificity" of the terms used in a statute is not required.[66]  The court stated that "'a statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'"[67]

The students acknowledge that "[t]he degree of vagueness the Constitution tolerates . . . depends in part on the nature of the enactment."[68]  In support of their assertion that 1232g(b)(6)(B) is unconstitutionally vague, the students cite to Johnson v. United States[69] and Sessions v. Dimaya.[70]  In Johnson, the United States Supreme Court held that the residual clause in the definition of "violent felony" as

---

[64] King County Dep't of Adult & Juvenile Det. v. Parmelee, 162 Wn. App. 337, 355, 254 P.3d 927 (2011) (internal quotation marks omitted) (quoting State v. Williams, 144 Wn.2d 197, 203, 26 P.3d 890 (2001)).

[65] Id. (quoting City of Spokane v. Douglass, 115 Wn.2d 171, 180, 795 P.2d 693 (1990)).

[66] 162 Wn. App. 337, 355-56, 254 P.3d 927 (2011) (citing City of Spokane, 115 Wn.2d at 179).

[67] Id. (quoting City of Seattle v. Eze, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)).

[68] Br. of Appellants at 26.

[69] 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015).

[70] 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018).

defined in the Armed Career Criminal Act was unconstitutionally vague because in deciding whether a specific crime qualified as a "violent felony," the court had "to picture the kind of conduct that the crime involve[d] in 'the ordinary case,' and to judge whether that abstraction present[ed] a serious potential risk of physical injury."[71] Similarly, in Dimaya, the United States Supreme Court held that the definition of "aggravated felony" in the Immigration and Nationality Act which included a "crime of violence" as defined in 18 U.S.C. §16(b) was unconstitutionally vague because it also required the court to "picture" a criminal offense in which "the particular facts" demonstrated "a substantial risk that physical force" was involved in committing the offense.[72] But unlike the statutes at issue under the facts of Johnson and Dimaya, FERPA and the PRA do not similarly require the court "to picture" the criminal offenses that violate them. We can consider other parts of the statutory scheme,[73] including the federal regulations[74] governing the FERPA "final results

---

[71] Johnson, 576 U.S. at 596-97. The residual clause of the Armed Career Criminal Act provided that a "violent felony" was "burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. at 594.

[72] Dimaya, 138 S. Ct. at 1211, 1216. The residual clause of 18 U.S.C. §16(b) provides "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Dimaya, 138 S. Ct. at 1211; 18 U.S.C. §16(b).

[73] King County Dep't of Adult & Juvenile Det., 162 Wn. App. at 355-57.

[74] See West, 3 Wn. App. 2d at 120, 123 (Division Two of this court used the Code of Federal Regulations to interpret FERPA, noting that FERPA restricts disclosure of "'personally identifiable information contained [in education records] other than directory information'" pursuant to 20 U.S.C. § 1232g(b)(2), and that 34 C.F.R. § 99.3 further defines "education records" and "personally identifiable information.").

exception." Those regulations expressly and in plain language define the crimes that qualify as crimes of violence and nonforcible sex offenses for purposes of the "final results exception." For example, one crime of violence under the federal regulations is burglary. "Burglary" is defined in the regulations as "[t]he unlawful entry into a building or other structure with the intent to commit a felony or theft."[75] And a crime that qualifies as a nonforcible sex offense under the federal regulations is incest. "Incest" is defined in the regulations as "[n]onforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law."[76]

Taken together, these definitions provide an ordinary person with a "sensible, meaningful, and practical interpretation"[77] of the types of crimes that, if committed, constitute a crime of violence or nonforcible sex offense and can be subject to public disclosure under the "final results exception."

Therefore, when we examine the context of the entire PRA and the "final results exception" in FERPA and give the language used a sensible, meaningful and practical interpretation, we conclude the "final results exception" to FERPA provides fair warning of the offenses that, if committed, could be disclosed. The students do not establish that the "final results exception" is unconstitutionally vague.

---

[75] 34 C.F.R. § 99, app. A. The other crimes of violence listed and defined in the regulation include arson, assault offenses, criminal homicide, vandalism of property, kidnapping/abduction, and robbery.

[76] Id. The other crime of nonforcible sex offense listed and defined in the regulation is statutory rape.

[77] King County Dep't of Adult & Juvenile Det., 162 Wn. App. at 355.

In the alternative, the students contend that the unredacted disciplinary results are exempt from public disclosure under the "other statute" provision of RCW 42.56.070(1) because the university's student code of conduct—in particular, WAC 516-21-310(1) and WAC 516-26-070—constitute an "other statute" and "prohibit disclosure of a student's personally identifying information to the public."[78]

WAC 516-26-070 provides, "The university shall not permit access to or release of a student's education records or personally identifiable information contained therein to any person without the written consent of the student."[79] But WAC 516-21-310(1) states that conduct proceedings and records will remain confidential "in compliance with the student records policy. Conduct records . . . [w]ill not be shared with any member of the public, <u>except</u> under the informed written consent of the student(s) involved or as stated in the student records policy, or <u>as required by law</u> or court order."[80]

In support of their assertion, the students argue <u>White v. Clark County</u>[81] holds that WAC provisions standing alone can create an "other statute" under the PRA. But the students' argument is misguided. In <u>White</u>, the parties disputed the appropriate format for the results of a PRA request for copies of electronic or digital image files of all pretabulated ballots in the 2013 general election.[82]

---

[78] Br. of Appellants at 21.

[79] CP at 161.

[80] CP at 157 (emphasis added).

[81] 188 Wn. App. 622, 354 P.3d 38 (2015).

[82] <u>White</u>, 188 Wn. App. at 627-28.

Division Two of this court held that the "ballot images" were exempt under the "other statute" exemption of the PRA.[83]  The court reasoned that under the facts of White, the "other statute" exemption "derives from a combination of article VI, section 6 of the Washington Constitution, multiple sections of Title 29A RCW, and secretary of state regulations authorized by statute."[84]  Contrary to the students' contention, White does not hold that WAC regulations alone can constitute an "other statute." And the view advocated by the students would allow an agency to adopt broad exemptions never contemplated by the legislature.

Unlike the WAC provisions at issue in White, WAC 516-26-070 and WAC 516-21-310(1) are not derived from any particular article of the Washington Constitution or multiple sections of the RCW.  We conclude that these WAC regulations do not constitute an "other statute" under section .070(1) where there is no corresponding and related statutory provision, making it clear that the unredacted disciplinary results are exempt from disclosure.   And, consistent with WAC 516-21-310(1), PRA disclosure requirements are "required by law."[85]

---

[83] Id. at 636-37.

[84] Id. at 631.

[85] The students contend the WAC 516-21-310(1) provision that "conduct proceedings and records" are exempt from public disclosure except as "required by law" is limited to subpoenas and discovery requests, but we find no authority for such a limited view.

III. Lack of Notice

The students argue that they "had no notice that the results of [their] disciplinary proceeding[s] might be released to the public."[86]  In support of their assertion, the students cite to Krakauer v. State,[87] a Montana case which held that the student's expectation of privacy in his educational records outweighed the public's right to know the contents of his records because Montana's student code of conduct did not provide the student with adequate notice that his records could be disclosed.  But in its decision, the Montana Supreme Court recognized that the exceptions to FERPA can provide adequate notice.[88]

Here, the university's student code of conduct contains multiple provisions notifying students that in some circumstances student records can be released to the public.  For example, WAC 516-26-010(2) provides that "[t]he university will normally not permit access to the public without a student's permission; some exceptions exist as detailed in this policy."  Additionally, WAC 516-26-100 requires the university to "annually notify students currently in attendance" of certain rights that each student has under the FERPA.  And as noted above, WAC 516-21-310(1) expressly provides for disclosure "as required by law."  We conclude that the university provided the students with adequate notice that their records could be disclosed.

---

[86] Br. of Appellants at 31-32.

[87] 396 Mont. 247, 256, 445 P.3d 201 (2019).

[88] Id. at 255-56 ("If the person had notice his records were subject to public disclosure or the public entity already made them publicly available, then he cannot have an actual or subjective expectation of privacy in the records.").

## CONCLUSION

We affirm the trial court's decision that the unredacted disciplinary results are not exempt from disclosure under the PRA "student file" exemption or under the "other statute" exemption. The students do not establish an actionable lack of notice.

Therefore, we affirm the trial court order requiring the university to disclose the unredacted disciplinary results.

_____

WE CONCUR:

_Andrus, A.C.J._ _____ _Mann, C.J._ _____